The argument of the morning is in Appeal No. 23-2765, Nikolai Anderson v. Mott Street. Mr. Brown, correct? Yes. Good morning, Your Honor. Good morning. Nice to see you. Go right ahead. May I please the court? Yes. Your Honor, my name is Attorney Sean Brown. I represent the Plaintiff, Nikolai Anderson, in this appeal from the District Court's Grant of Summary Judgment in favor of the defendant, Appellee Mott Street. Your Honors, the Plaintiff should have survived summary judgment for several reasons. In reviewing this matter de novo, the claims submitted by the Plaintiff show that there is a claim of sexual harassment, sexual discrimination, as well as retaliation. What's your strongest argument on the sexual harassment? The evidence has to support that the conduct was so severe or pervasive, and all you've identified are four or five individual incidents over a two-year period, some of those involving patrons of the store and not employees. How, under our case law, does that come close to sexual harassment? Well, Your Honor, in viewing the record in the light most favorable to the Plaintiff, in the Plaintiff's deposition, she specifically talked about four to five instances of sexual harassment. Over a two-year period. Correct. However, she made additional statements saying that she was touched and groped a lot. She indicated that there were other instances, she just did not go into detail about the other instances that occurred. But to answer your question... Did she lodge complaints in real time? I mean, what you're saying resonates to the extent that it describes the content of her emails. Correct. Late in her... But as, for example, at the time that she was groped or touched inappropriately, did she lodge a complaint anywhere near the time of the incident? Yes. In the Plaintiff's deposition, she indicated that she would report these incidents to Lola verbally, but the actual written memorialization didn't happen until those emails were submitted. So with respect to the sexual harassment claim, Your Honor, there was sufficient evidence for the district court to find that there were genuine issues of material fact. The Plaintiff testified that an employee touched her butt. She testified that an employee hugged her several times, grabbing her waist and caressing her behind. That puts us at four instances. Then we have the fact that she says another employee called her a derogatory name that's expressed towards females. She indicated that a specific instance where a patron grabbed her breast and butt. That's six instances. Then she testified that patrons grabbed her a lot. So and that's what I was referring to, Justice St. Eve, when I said that she said, you know, during that deposition there were instances, but there were so many of them that she couldn't she couldn't describe each and every single encounter. But when, in a lot of these cases, though, when you're talking about allegations of a workplace environment being so severe, you know, the sexual harassment being so pervasive, one of the things that we often look for is evidence that the employer was on notice of it, right? Because you're not, if we give the position you're advancing all the benefit of the doubt, that a patron inappropriate, multiple patrons inappropriately touched her, right? You would expect her to be raising that to her employer, saying, why aren't you doing something about this? Or I can't continue to work here as long as you're going to allow patrons to do this kind of stuff. And, you know, and you just don't see it. You see it in that email right before the termination. Justice Scudder, with respect to that issue, the record is, has profound information concerning the plaintiff going to managers, telling them, hey, this person's touching me. She actually went to the owner, and told the owner about, you know, how these people were groping her, and she asked the owner. What's the record evidence of that? Is that, are you thinking about her deposition testimony? Yes, I'm referring to the deposition testimony. And these are all these oral reports. Yes, with respect to that, everything is an oral report except for the emails that were sent on August 26th of 2017. I thought she testified that she complained to Lola, not to the owners, about several of these specific instances. But I don't think she testified that she complained about all these other alleged inappropriate touches by patrons. There was one instance, the instance specifically addressed in the deposition where the patron groped her breast and behind. But that's one instance. To qualify for sexual harassment, inappropriate, completely inappropriate, but to qualify for severe or pervasive as to alter the conditions of employment. And one instance doesn't rise to that occasion. And Justice St. Eve, I'm glad you brought that point up. Because she actually went to the owner and told him about this situation, and he said, okay, we're going to do something about it. But later, the owner went to her and told her, hey, I still need you to wear tight clothing when she went to him and said, you know, I want to wear looser fitted clothing. The owner told her, you need to wear tight clothing. So that's a situation that, you know, it... She wore the same clothes she wore to her law firm job, correct? I think she admitted that. Yes. That was early on. But however, later on during the course of her employment, they wanted her to wear tight fitted clothing that would, you know, show off her body essentially. And it was... I don't... According to her testimony, she never changed the way she dressed. She came in wearing what she wore to the law firm. Judge, I can provide a supplement with the record sites indicating... That's okay. If it's in there. But that's not how I read it. Okay. So with respect to the sexual harassment, Your Honor, you indicated that it has to be so subjective and prevail to create an abusive work environment and that's exactly what it was. She went to the owners as well as her managers repeatedly asking to be moved to a different position because of that conduct. With respect to the second claim of sexual discrimination, the record also shows that men were treated differently than women. The district court looked at it, looked at only one angle of the prism. The other angle... Who was your male comparator? The male comparator would be an individual named Simon. The deposition testimony of plaintiff indicates that... But the complaint about Simon was that he was coming late. Not that he was nasty to patrons coming to the... It's a different complaint. Comparators have to be similarly situated and engage in similar conduct. That's correct. In the plaintiff's deposition, she indicated that customers would complain about Simon. Simon would use the phone. He would be on the laptop. But he... There was no allegation or testimony that customers complained about Simon because he was nasty to them. With respect to the Yelp reviews, there is not. The Yelp reviews actually don't indicate any party by name as to an individual being nasty or, you know, raising complaints. And that's part of the issue with plaintiff's position is that these Yelp reviews could be talking about anybody. So she doesn't really have any idea who they're talking about, nor can the defendant at police point out. Well, I thought... I don't know if it was Mr. Kim or Mr. Chun or somebody when the Yelp reviews would come in and say we were treated horribly last, you know, Tuesday when we were in for dinner. They traced it back to the work schedule and they saw that she was the hostess on duty that evening. So it's not just rank speculation, you know, who are they connected to. They traced it back. Well, Your Honor, I would disagree with that because the affidavit is a fishy affidavit. The affidavit comes six years after Ms. Anderson's... You didn't argue that below. You didn't argue fishy affidavit or sham affidavit below. Well, Judge, because at that point, the district court had access to the facts that would show that there's a material, a genuine issue of material fact and dispute for the matter to be tried before a jury. And, Your Honor, I'd ask if I could reserve my remaining... Yeah, we'll give you... How about we give you a minute on rebuttal? We took up some of your time with questions. So we'll hear from you in a minute. In the meantime, we'll hear from Mr. Sharpe, the Restaurants Counsel. Thank you. You're welcome. Good morning, Your Honors. May it please the Court. Brian Sharpe on behalf of Defendant Appalee Montstreet. This is really a case about a worker who failed to take accountability. Ms. Anderson was terminated for eight guests who complained on social media about her rude behavior. And as if that were not enough, she was rude to her bosses, the four owners of the company. And at that same time, she was insubordinate to her direct supervisor on three separate occasions. That's what led to her termination, and it had nothing to do with her sex or gender, and it had nothing to do with any protected activity that she arguably engaged in. Judge Durkin's well-reasoned opinion granting summary judgment may be affirmed for two separate reasons. Number one, on the merits, and number two, under the doctrine of waiver. Regarding waiver, if I could address that briefly, nearly everything argued, at least with respect to the harassment and the retaliation claims, everything argued on appeal. None of that was argued before the district court. Very little was devoted to the sexual harassment claim or the retaliation claim on summary judgment. The arguments were just a few sentences long in the briefing, very perfunctory, and thus it operates as a waiver when presented for the first time before this court. On the merits, even if the arguments were properly preserved or developed before the The problem is there's just simply no evidence to support them. It's not enough to simply deny facts in a local rule 56.1 statement of facts without citing to some competent evidence. It's not enough. Mr. Sharpen, I know it's not required under your employee handbook or employee plan, but did your client ever talk to Ms. Anderson or attempt to address the Yelp complaints or his own observations about her conduct with her? Yes, Judge. There was a, we call it a counseling session that they had after the first batch of negative reviews came in. Ms. Anderson— Was that with her one-on-one as opposed to with all of the employees? I thought that was more of a group counseling. It was more of a group counseling, but she was present and heard the same message that her peers heard about the importance of being kind and respectful to customers or guests who come into the restaurant. Did they ever talk to her one-on-one? There's nothing in the record that suggests that they talked to her one-on-one in a separate counseling session, although Nate Chung, her supervisor, was with her one-on-one virtually every single shift. Is there any evidence that she complained along the way as these incidents were occurring? Reading the record most favorable to her, it's, she testified that Lola, kind of a lower level— She managed the front area. She managed the front. There was testimony that suggests she knew about it, which is speculation. There's really nothing that suggests that she reported it. Now there are these emails in the record that come much later in her employment, but contemporaneously there's not much in the record that really suggests that she did report this other than her speculation that Lola and others knew about it. With respect to the harassment claim, as your honors recognize, the threshold in the Seventh Circuit is very high. It's a high bar to establish a hostile environment based on sexual harassment. In the end, the harassment claim fails because there are four to five isolated, non-serious instances that occurred over a two-year period. Under the case law that we've cited in our brief, this just simply is not enough to be actionable. Regarding the sex discrimination claim, under the Ortiz standard, there's no evidence to take to a fact finder to conclude that Ms. Anderson was terminated because of her sex. This is particularly so because nine of the ten hosts hired after her were also female. We've identified male comparators who were terminated for similar reasons. The organization is 50% women-owned with many female managers, including Lola, who was promoted from host to manager during Ms. Anderson's own employment. When it comes to pretext, Ms. Anderson may not believe the social media postings were about her, but that's really not what the question is on summary judgment. The question is, what does the employer honestly and reasonably believe was going on to establish pretext? She came up short on that front. There's more than ample basis for Nate Chung to conclude that these negative social media postings were about Ms. Anderson, namely that he correlated the schedules. Likewise, the retaliation claim fails because, number one, there was never a legally protected activity and even if there was, Ms. Anderson in her deposition acknowledged that timing was really the only basis that she was relying upon, which in this circuit, generally speaking, timing alone does not get you past summary judgment on a retaliation claim. Beyond that, we've identified comparators who undisputedly did not engage in any protected activity and there's no other inference of any sort of retaliatory evidence. So if there are no further questions, we ask that this Court affirm the District Court's grant of summary judgment. Thank you. Very well, Mr. Sharp. Mr. Brown? Your Honor, there is record evidence of sex discrimination. I draw the Court's attention to appendix page 47 and appendix page 52 in which, during Ms. Anderson's deposition, she tells that there were people complaining about Simon. He never had any punishment for using the phone, never had any punishment for using the tablet, but she was. Furthermore, counsel opposite indicates that there is not enough evidence, but in the case of Payne v. Pauley, merely an affidavit is sufficient. Here we have a significant, substantial deposition from Ms. Anderson, talking about the wrongful conduct of Mott Street, and her forming the complaint does count as a legally protected activity under case law. Based on that, we ask that you reverse the District Court's decision. Okay. Mr. Brown, thank you very much. Mr. Sharp, thanks to you, we'll take the appeal under advisement. That brings us to our-